UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

TRACEY EVETTE RICHARDS,

    Plaintiff,

  v.

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

    Defendant.

16-CV-804
DECISION AND ORDER

---

On October 7, 2016, the plaintiff, Tracey Evette Richards, brought this action under the Social Security Act ("the Act"). She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she is not disabled. Docket Item 1. On May 2, 2017, Richards moved for judgment on the pleadings, Docket Item 13; on September 20, 2017, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 19; and on October 11, 2017, Richards replied, Docket Item 20. Richards primarily contends that the decision must be remanded because the administrative law judge ("ALJ") failed to weigh and consider her treating medical source's opinion that Richards's eye condition renders her unable to use a computer at work. Docket Item 13-1 at 17.

For the reasons that follow, this Court grants Richards's motion in part and denies the Commissioner's cross-motion.

---

[1] Although Carolyn W. Colvin was Acting Commissioner of Social Security when Richards first filed her complaint, Nancy A. Berryhill is now the Acting Commissioner of Social Security. *See Patterson v. Berryhill*, No. 2:18-cv-00193-DWA, slip op. at 2 (W.D. Pa. June 14, 2018).

**BACKGROUND**

I.  **PROCEDURAL HISTORY**

On June 12, 2013, Richards applied for disability insurance benefits. Tr. 141. She claimed that she had been disabled since December 7, 2012, due to blepharospasm,[2] degenerative disc dissection, arthritis, migraines, chronic obstructive pulmonary disease, and anxiety. Tr. 83-84.[3]

On September 30, 2013, Richards received notice that her application was denied because she was not disabled under the Act. Tr. 82, 92, 99, 103. She requested a hearing before an ALJ, Tr. 104-05, which was held before ALJ Robert T. Harvey on June 18, 2015, Tr. 39. ALJ Harvey then issued a decision on August 5, 2015, confirming the finding that Richards was not disabled. Tr. 31. Richards appealed the ALJ's decision, but her appeal was denied, and the decision then became final. Tr. 1. On October 7, 2016, Richards filed this action, asking this Court to review the ALJ's decision. Docket Item 1.

---

[2] Blepharospasm is an "[i]nvoluntary contraction of the muscles of the eyelid, resulting in closure of the eye." *Blepharospasm*, AM. JUR., PROOF OF FACTS: ATTORNEY'S ILLUSTRATED MEDICAL DICTIONARY at B15 (3d ed. 2002).

[3] According to Richards's initial disability determination, which was completed in September 2013, Richards initially filed for disability on June 17, 2013, alleging a disability onset date of December 7, 2012. Tr. 83-84. An "Application Summary for Disability Insurance Benefits" generated by the Social Security Administration on July 12, 2013, however, notes that Richards applied for benefits on July 12, 2013, and that she became unable to work on December 20, 2012. Tr. 141. A field office disability report dated June 12, 2013, also indicates that Richards's alleged onset date was December 20, 2012. Tr. 160.

2

## II. RELEVANT MEDICAL EVIDENCE

The following summarizes the medical evidence most relevant to Richards's objection. Richards was examined by a number of different providers, most of whom are mentioned in the ALJ's decision, but only Aston B. Williams, M.D., a gastroenterologist and Richards's primary care physician, and two doctors from the Cleveland Clinic are of significance to Richards's eyesight-impairment-related objection to the ALJ's decision.

### A. Aston B. Williams, M.D., a Gastroenterologist

A number of medical reports refer to Dr. Williams, a gastroenterologist, as Richards's primary care physician. *See, e.g.*, Tr. 355 (report by Humberto Choi, M.D., a pulmonologist, dated October 23, 2013); Tr. 241 (emergency department report dated December 4, 2012); Tr. 254 (emergency department report dated Sept. 12, 2013); Tr. 239 (report by Michael S. Weingarten, M.D., a rheumatologist, dated October 31, 2012); Tr. 286 (report by Lauren Jendraszek, a physician assistant, dated July 8, 2013); Tr. 290 (report by P.A. Jendraszek dated June 10, 2013); Tr. 297 (report by P.A. Jendraszek dated April 26, 2013); Tr. 300 (report by P.A. Jendrasek dated Feb. 28, 2013); Tr. 307 (report by Maria Rizzo, a physician assistant, dated January 24, 2013); Tr. 322 (letter by Jack Cukierman, M.D., an endocrinologist, dated July 17, 2013). But the record does not include medical records from Dr. Williams; instead, the only substantial records from Dr. Williams are two letters addressing Richards's medical issues. Tr. 557-60.[4]

---

[4] The record also includes two cover letters written by Dr. Williams. Tr. 555-56.

In the first letter, dated July 3, 2013, Dr. Williams wrote to a P. David Jarry, M.D.[5] Tr. 557. In the letter, Dr. Williams attempted to "give[] some clarity to the medical condition on Ms. Tracey Richards." Tr. 558. He described Richards's medical diagnoses, including cervicalgia, spinal stenosis, and myofascial pain. Tr. 557. He noted that Richards had "a cervical herniated disc disease and an eye condition which consists of ptosis of the right upper lid and a lid retraction of the left upper and lower lids." Tr. 557. "She was given a diagnosis of blepharospasm which was treated with Botox injections. . . without any improvement." Tr. 558. Dr. Williams described his communications with Richards, including her statements that a "trigger point injection she has been receiving [has] not been giving her any relief." Tr. 557. Regarding her eye condition, he noted that while she is not blind, her "pain and inability to focus and the twitching or blepharospasm of the eye . . . has made it impossible to use the computer." *Id.* Dr. Williams described Richards's treatment by various other doctors, including a neurologist at the Dent Neurological Center; Dr. Daniel Schaefer, an ophthalmologist; and Dr. Weingarten, a rheumatologist. *Id.* He noted that "the patient has seen [three] different ophthalmologists and no one has come up with a correct diagnosis or the proper treatment plan for her." Tr. 558.

In Dr. Williams's second letter, dated October 9, 2013, he wrote to Juliann Perry, M.D., a doctor at the Cleveland Clinic, referring Richards to Dr. Perry for evaluation, diagnosis, and treatment. Tr. 559. In the letter, Dr. Williams again summarized Richards's ailments. *Id.*

---

[5] The record is silent as to the specialty of Dr. Jarry.

As of June 2015, in a brief cover letter, Dr. Williams opined that Richards was "no better than she was [two] years ago." Tr. 555.

### B. Cleveland Clinic Ophthalmology Evaluations

On October 24, 2013, Richards was evaluated by Dr. Perry, an ophthalmologist at the Cleveland Clinic. Tr. 374-376. Dr. Perry concluded that he did not "see a physiologic cause of vision loss," Tr. 376, and he recommended Richards to Lisa D. Lystad, M.D., another ophthalmologist.

Dr. Lystad evaluated Richards on November 26, 2013. Tr. 431. Dr. Lystad addressed Richards's complaints including difficulty focusing with both eyes and "constant" twitching. Tr. 431. Her report stated that Richards received botox "which helped the twitching." *Id.* Dr. Lystad diagnosed Richards with sudden loss of vision, progressive high (degenerative) myopia, monoclonal gammopathy, and migraines. Tr. 435. Regarding her vision loss, Dr. Lystad reported that she "[r]eassured [the] patient and [her] family that [she] did not see an[y] pathology that would prevent the return of baseline vision." Tr. 435. She reported that Richards's thyroid was functioning normally. *Id.* Dr. Lystad also provided Richards with instructions for how best to use a computer with Richards's conditions, including decreasing screen brightness, increasing screen contrast, changing default background colors so that there are light letters on a darker background, and using certain font styles and sizes. Tr. 436.

## III. THE ALJ'S DECISION

In denying Richards's application, the ALJ evaluated Richards's claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. § 404.1520. At the first step, the ALJ must determine

5

whether the claimant is currently engaged in substantial gainful employment. § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments. § 404.1520(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or impairments meet or equal an impairment listed in the regulations. § 404.1520(a)(4)(iii). If the claimant's severe impairment or impairments meet or equal one listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that none of the severe impairments meet any of the regulations, the ALJ proceeds to step four. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is a holistic assessment of the claimant—addressing both severe and nonsevere medical impairments—that evaluates whether the claimant can perform past relevant work or other work in the national economy. *See* 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant can perform past relevant work, he or she is not disabled and the analysis ends. § 404.1520(f). But if the claimant cannot, the ALJ proceeds to step five. 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of

adjusting to an alternative job.  *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987);
20 C.F.R. § 404.1520(a)(v), (g).  More specifically, the Commissioner bears the burden
of proving that a claimant "retains a residual functional capacity to perform alternative
substantial gainful work which exists in the national economy."  *Rosa v. Callahan*, 168
F.3d 72, 77 (2d Cir. 1999).

In this case, the ALJ determined at step one that Richards had not engaged in
substantial gainful activity since December 7, 2012, the alleged onset date.  Tr. 21.  At
step two, the ALJ found that Richards had the following severe impairments:
"blepharospasms, myalgia (right side of body), and asthma."  *Id.*  At step three, the ALJ
determined that these severe impairments did not medically equal the criteria of any
impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  *Id.*

In assessing Richards's RFC, the ALJ determined that Richards could perform
light work, as defined in 20 C.F.R. § 404.1567(b),[6] but could not work in an area with
unprotected heights or around heavy, moving, or dangerous machinery.  Tr. 22.
Additionally, the ALJ found that she "cannot work in an area where she would be
exposed to excessive pulmonary irritants" and that she "has occasional limitations in
bending, climbing, stooping, squatting, kneeling, balancing, or crawling."  *Id.*  She
cannot climb ladders, scaffolds, or ropes.  *Id.*  She occasionally cannot "reach in all

---

[6] "Light work involves lifting no more than [twenty] pounds at a time with frequent lifting or carrying of objects weighing up to [ten] pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities. If someone can do light work, . . . he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

7

directions with her right upper extremity" and "has an occasional limitation for pushing or pulling with her right upper extremity." *Id.* Finally, the ALJ found that "[s]he has an occasional limitation for near and far acuity, depth perception[,] and peripheral vision;" and "[s]he cannot work in areas where she would be exposed to excessive cold or dampness." *Id.*

At step four, the ALJ determined that Richards had the RFC to perform past relevant work as a customer service representative and customer complaint clerk. Tr. 30.

Richards raises two objections to the ALJ conclusions. First, Richards argues that the ALJ erred because his written determination did not mention Dr. Williams's statement that Ms. Richards could not use a computer at work. Docket Item 13-1 at 17-19. Second, she objects to the ALJ's formulation of her RFC because, she argues, he "failed to perform a function by function analysis." *Id.* at 19-22.

## **STANDARD OF REVIEW**

When evaluating a decision by the Commissioner, district courts have a narrow scope of review: they are to determine whether the Commissioner's conclusions are supported by substantial evidence in the record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court ***must*** accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)).

In other words, a district court does not review a disability determination de novo. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

## DISCUSSION

### I. THE TREATING SOURCE RULE AND THE DUTY TO DEVELOP THE RECORD

#### A. Dr. Williams's Treating Source Opinion

"The treating physician rule . . . was originally developed by Courts of Appeals as a means to control disability determinations by administrative law judges under the Social Security Act." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 829 (2003). "In 1991, the Commissioner of Social Security adopted regulations approving and formalizing the use of the rule in the Social Security disability program." *Id.* "The Social Security Administration, the regulations inform, will generally 'give more weight to opinions from . . . treating sources,' and 'will always give good reasons in [its] notice of determination or decision for the weight [it] give[s a claimant's] treating source's opinion.'" *Id.* (quoting 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). An "ALJ must 'review all of the evidence relevant' to a claim under 20 C.F.R. § 404.1527(c), but he does not err by failing to mention all of that evidence." *Pope v. Barnhart*, 57 F. App'x 897, 899 (2d Cir. 2003) (summary order).

Here, the record includes two letters from Dr. Williams, referred to multiple times as Richards's primary care physician. Tr. 557-60. Richards has plucked one statement from one of Dr. Williams's letters in which he states that "because of the pain and inability to focus and the twitching or blepharospasm of the eye, this has made it impossible [for Richards] to use a computer," Tr. 557, and argues that the ALJ's failure

9

to mention that conclusion requires remand, Docket Item 13-1 at 17-19.  This Court has serious doubt that the ALJ's failure to address that sentence from the letter is itself error, especially when the ALJ discusses at great length Richards's eye condition and the reasons why it does not prevent her from performing substantial gainful activity.  For example, the ALJ discussed Richards's treatment by Dr. Lisa Lystad, Richards's ophthalmologist, and cited substantial evidence from Dr. Lystad's records supporting his conclusion that Richards's eye-related impairments were not sufficiently severe to render her disabled under the Social Security Act.  Tr. 27-28.

That being said, although the ALJ evaluated the medical opinions of a great number of providers and assigned a weight to each, Tr. 22-30, the ALJ's decision fails even to mention Dr. Williams's medical opinion and evidence in the record that relates to his treatment of Richards.  That is inconsistent with SSA's own regulations, which require ALJs to explain the weight given to a treating source opinion and the reasons supporting that decision.  *See* C.F.R. § 404.1527(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's medical opinion"); *Smith v. Comm'r of Soc. Sec. Admin.*, 731 F. App'x 28, 30 (2d Cir. 2018) (summary order) (remand not necessary where "ALJ properly afforded little weight to the opinion of [claimant's] primary care physician . . . *and set forth good reasons for doing so*") (emphasis added).  What is more, in 2015—two years after Dr. Lystad's optimistic findings upon which the ALJ relied—Dr. Williams concluded that Richards was no better than she had been two years earlier, but the ALJ does not address that.  Tr. 555.  For those reasons, the case must be remanded so that the ALJ can consider Dr. Williams's records and opinions.

10

The Commissioner argues that there is no evidence that Dr. Williams is a treating source. Docket Item 19-1 at 24. *See Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1039 n.2) ("a physician who only examine[s] a claimant 'once of twice' [does] not see that claimant regularly and d[oes] not develop a physician/patent relationship with the claimant"). Indeed, the nature and extent of the medical relationship between Richards and Dr. Williams is somewhat ambiguous. In communication between Richards's attorney and the ALJ, Richards's attorney described Dr. Williams as a treating physician. Tr. 554. But the only substantive medical evidence in the record from Dr. Williams are the two letters he wrote about Richards's conditions. Tr. 557-560. Because much in those two letters addresses treatment by other doctors, the ALJ might have concluded that, based solely on the letters, Richards did not have a treating physician relationship with Dr. Williams. *See id.*

On the other hand, reports from a great number of other doctors and sources throughout the record describe Dr. Williams as Richards's primary care physician. *See e.g.*, Tr. 239, 241, 254, 286, 290, 297, 300, 307, 322, and 355. Additionally, the context of the letters, including Dr. Williams's knowledge of Richards's treatments and his referral of Richards to doctors at the Cleveland Clinic, suggest that he may well have had a close and continuous treatment relationship with Richards. *See* Tr. 557-560. In light of the "reasonable basis for doubt whether the ALJ" correctly applied the treating source rule to Dr. Williams, the case deserves remand—at least for the ALJ to address their relationship in the first instance. *Schaal v. Apfel*, 134 F.3d 496, 504 (2d Cir. 1998) (quoting *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).

Furthermore, even if Dr. Williams was *not* Richards's primary treating physician, SSA regulations provide that the agency "will always consider the medical opinions in [a claimant's] case record together with the rest of the relevant evidence [it] receive[s]" and that "[r]egardless of its source, [SSA] will evaluate every medical opinion [it] receive[s]." 20 C.F.R. § 404.1527. Here, "without any analysis from the ALJ, there is no basis for drawing any conclusions about what evidence [from Dr. Williams that] he considered or overlooked." *Thomas v. Colvin*, 826 F.3d 953, 959 (7th Cir. 2016). Stated another way, the ALJ should expressly consider the medical evidence from Dr. Williams even if the ALJ correctly concludes that Dr. Williams was not Richards's primary treating physician.

### B. Duty to Develop the Record

The ALJ's duty to develop the record also required him to contact Dr. Williams to obtain any substantive medical records relating to Richards's impairments.

The Social Security Act provides that:

> In making any determination [with respect to whether an individual is under a disability] the Commissioner of Social Security shall make every reasonable effort to obtain from the individual's treating physician ... all medical evidence, including diagnostic tests, necessary in order to properly make such determination, prior to evaluating medical evidence obtained from another source on a consultative basis.

42 U.S.C. § 423(d)(5)(B). "Even when a claimant is represented by counsel, it is the well-established rule in our circuit 'that the social security ALJ, unlike a judge at trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Morgan v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). "Because treating source evidence (including opinion evidence) is important, if the evidence does not support a treating source's opinion on any issue

12

reserved to the Commissioner and the adjudicator cannot ascertain the basis of the opinion in the case record, the adjudicator must make 'every reasonable effort' to recontact the source for clarification of the reasons for the opinion." *Deck v. Comm'r of Soc. Sec. Admin.*, 2018 WL 6111773, at *6 (Nov. 21, 2018) (quoting SSR 96-5p, 1996 WL 374183, at *6).

Here, as noted above, both (1) the context of Dr. Williams's letters and (2) the repeated references by other doctors to Dr. Williams as Richards's primary treating physician suggests a close provider-patient relationship. But the record includes only two substantive letters that Dr. Williams wrote on his patient's behalf and no medical records from him. For that reason, there appears to be a "clear gap[] in the administrative record" that the ALJ had a duty to develop further by contacting Dr. Williams directly to find out what medical evidence from his office might be missing from the record. *Rosa v. Callahan*, 168 F.3d 72, 79 (2d Cir. 1999). And if there were no such records, or if such records were unobtainable for some reason, the ALJ should have described the efforts the agency took to obtain them.

For those reasons as well, the case is remanded so that the ALJ can develop the record by obtaining all of Richards's medical records from Dr. Williams, expressly consider any medical evidence available from Dr. Williams, and reweigh the evidence.

## II. THE ALJ'S FAILURE TO USE A FUNCTION-BY-FUNCTION ANLAYSIS

Richards also argues that the ALJ failed to perform a "function-by-function analysis" in formulating Richards's RFC and that this failure was legal error. Docket

13

Item 13-1 at 19-22.  Under Social Security Ruling 98-8p,[7] which states the SSA's "policies and policy interpretations regarding the assessment of [RFC] in initial claims for disability benefits," the

> RFC assessment must first identify the individual's function limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. 404.1545 and 416.945.  Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).  Furthermore,

> [t]he functions described in paragraphs (b), (c), and (d), of 20 C.F.R. §§ 404.1545 and 416.945 include physical abilities such as sitting, standing, walking lifting, carrying, pushing, pulling, or other physical functions; mental abilities such as understanding, remembering, carrying out instructions, and responding appropriately to supervision; and other abilities that may be affected by impairments, such as seeing, hearing, and the ability to tolerate environmental factors.

*Cichocki v. Astrue*, 729 F.3d 172, 176 (2d. Cir. 2013).

Nevertheless, the Second Circuit has determined that an "ALJ's failure to conduct an explicit function-by-function analysis in concluding, at Step Four, that [a claimant] is able to return to her past work . . . is [not] a *per se* error requiring remand." *Id.* at 176-77.  Instead, "[t]he relevant inquiry is whether the ALJ applied the correct legal standards and whether the ALJ's determination is supported by substantial evidence." *Id.* at 177.  Specifically, courts must consider whether an "ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is

---

[7] "Social Security Rulings . . . are binding on all components of the Social Security Administration.  These rulings represent precedent final opinions and orders and statements of policy and interpretations that [SSA] ha[s] adopted."  20 C.F.R. § 402.35(b)(1).

14

supported by substantial evidence such that additional analysis would be unnecessary or superflouous[.]" *Id.* "Remand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Id.*

Because this Court's remands the case so that the ALJ can consider whether any medical evidence relating to Dr. Williams's treatment might modify Richards's RFC, questions regarding the adequacy of the ALJ's RFC analysis "may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003). This Court therefore will not reach these issues. *Id.* Nevertheless, the Court observes that an adequate written explanation of the ALJ's determinations in formulating Richards's RFC is necessary for meaningful judicial review. *Cichocki*, 729 F.3d at 177.

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 19, is DENIED, and Richards's motion for judgment on the pleadings, Docket Item 13, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: December 28, 2018
    Buffalo, New York


              *s/ Lawrence J. Vilardo*
              LAWRENCE J. VILARDO
              UNITED STATES DISTRICT JUDGE